M. A. SMITH, as Liquidator of Trust Company of Florida, v. FLEETWOOD BUILDING CORP., etc.

163 So. 293.

Opinion Filed January 7, 1935.

Petition for Rehearing Denied August 28, 1935.

*Edward E. Fleming,* for Appellant;

*Harry I. Lipton,* for Appellee.

PER CURIAM.—The appeal in this case is from an order appointing a Receiver and denying motion to dismiss the bill of complaint.

Bill of complaint was filed by Fleetwood Building Corporation for and on behalf of itself and all other bondholders and holders and owners of participating ownership certificates similarly situated. The bill sought the appointment of a Receiver *pendente lite,* the discharge of M. A. Smith, Liquidator-Trustee of the Trust Company of Florida, as Trustee for the particular property described in the bill of complaint, for an accounting and the appointment of a successor Trustee.

We glean from the record that a trust deed was originally executed by one J. Perry Stoltz and his wife, Nellie C. Stoltz, to G. L. Miller Bond & Mortgage Company to secure bonds in the sum of $60,000.00. The Trust Deed covered the property involved in this suit. G. L. Miller Bond & Mortgage Company had its name changed to Marion Mortgage Company. Default occurred in payment of the indebtedness secured by the Trust Deed. Marion Mortgage Company instituted a foreclosure suit which was carried to final decree and the property sold, a conveyance being made to Trust Company of Florida as Trustee. Complainants in this suit became owners of ownership certificates issued by Trust Company of Florida in lieu of original bonds in the sum of $6,900.00. In November of 1931 the Comptroller of Florida took over the Trust Company of Florida for the purpose of liquidation and appointed one Therrell as Liquidator. M. A. Smith was later appointed General Liquidator and succeeded Therrell and became Liquidator-Trustee of the trust property.

In May, 1934, Smith, as Liquidator-Trustee, filed a bill of complaint in the Circuit Court of Dade County, Florida,

to foreclose an alleged trustee's lien against the property in the amount of $10,623.58, and filed *lis pendens* against the property.

Thereupon, the bill of complaint in this suit was filed, it being alleged that Smith, as Liquidator-Trustee, by instituting the suit and proceedings to foreclose the alleged Trustee's lien, had placed himself in a position antagonistic to the beneficiaries of the trust estate.

It is too well settled to require citation of authorities that where a Trustee places himself in a position antagonistic to the *cestui que* trust he should retire from the trusteeship. The record shows that the order complained of was made after hearing and, therefore, in this state of the record it devolves upon the appellant to show that the Chancellor abused his judicial discretion in making that order.

It has not been made to appear that the Chancellor did not abuse his judicial discretion in this regard and, therefore, the order appealed from should be affirmed. It is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

## ON PETITION FOR REHEARING.

PER CURIAM.—On January 7, 1935, this Court affirmed the order herein appealed from, which was an order appointing a Receiver. It has recently been held that a Chancellor's findings regarding the propriety of a receivership for trust property will not ordinarily be disturbed. Douglas Properties v. Stix, 118 Fla. 354, 159 So. Rep. 1. This rule is especially applicable to a case like this one wherein the Chancellor has been satisfied after a full hear-

ing that the interests and activities of a Trustee in possession are so antagonistic, adverse and in conflict with the interests of the beneficiaries of the trust that a neutral Receiver should be ordered to take charge of and manage the trust *pendente lite*. See: Pyle v. Pyle, 199 N. Y. 538, 92 N. E. Rep. 1099. The mere appointment of a Receiver would not defeat the claim of Trustee for declaration of a lien on the trust properties for advances nor the granting of authority to sell the property, if that be found warranted.

In the present case the Court specifically found as follows:

"It appearing to the Court that the defendant herein has instituted his suit in this Court to foreclose his alleged lien, for advances against the trust property involved in this cause, the record title of which is in the name of the defendant, as Trustee, and it appearing further that the interests of the defendant, as Trustee, are in conflict with and inconsistent with the interests of the beneficiaries of the trust, and that there should be someone, other than the present Trustee, to represent all of the beneficiaries of this trust, in the suit instituted by the Trustee seeking to foreclose his alleged lien for advances to said trust, and it further appearing that the State, county and municipal taxes for several years assessed and levied against the property covered by said trust have remained unpaid, and it further appearing that the trust property is in grave and immediate danger of being lost to the beneficiaries; and it further appearing that a notice of *Lis Pendens* has been filed and recorded against the trust property, by the defendant, as Trustee, in his suit for the foreclosure of his alleged lien for advances, * * *

"It is further ORDERED, ADJUDGED AND DECREED That C. L. Clements be, and he is hereby appointed Receiver

herein with all the powers and charged with all the duties' in such cases made and provided, and to take charge of the property and collect such rents, issues and profits as may be due or become due arising therefrom, etc."

We hold the Chancellor's finding to be sustained by the record and entirely sanctioned by the law as applicable to the situation thus found to exist.

Rehearing denied.

WHITFIELD, C. J., and ELLIS, TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—The mere fact that the Trust Company of Florida, which is being liquidated by the bonded statutory Liquidator appointed by the State Comptroller, had a lien, or the right to have one declared and enforced, on the assets of the trust estate for advances made to conserve and protect said estate for the benefit of the holders of the participating ownership certificates— the *cestui que trustent*—which lien the Liquidator of the Trust Company sought to have declared and protected as a first lien upon the trust estate, or its proceeds, when and if it should be ordered sold by the Court, does not, in my opinion, create an antagonistic interest on the part of the statutory Liquidator which would disqualify him and require his displacement by a Court Receiver. The lien, or the right to it, would continue to exist, and hence would disqualify the Court Receiver and successor Trustee appointed by the Court as much as it would the Liquidator, for it would likewise become their duty to enforce such lien. The prime duty of a Trustee is the faithful and efficient conservation of the trust. Kay v. Bostwick, 83 Fla. 308, 91 So. 112. And trustees are entitled to reasonable compensation for their services in that regard, and for reimbursement for

costs and expenses properly incurred, including attorney's fees, for defending the trust estate and enforcing the trust for the benefit of the *cestuis que* trust. Smith v. Mass. Mutual Life Ins. Co., 116 Fla. 390, 156 So. 498. And in Bay Biscayne Co. v. Baile, 73 Fla. 1120, 75 So. 860, this Court held that the circuit courts have the power to declare a lien on the trust estate in favor of the Trustee for the enforcement of the payment of such expenditures, costs and counsel fees out of the same, by a sale thereof, and may prevent the delivery of the trust property, after the abrogation of the trust by the settler, until all proper expenses, counsel fees and costs incurred by the Trustee have been paid.

It appears from the record in this case that the purpose of the bill filed by the Liquidator of the Trust Compnay of Florida in May, 1934, was not merely to foreclose the trustee's lien for advances made in behalf of the repair and preservation of the trust property, and for compensation to the Trustee, but the general purpose of the suit was to secure the authority of the Court to sell the trust property, on such terms and conditions as the Court might authorize, the proceeds of the sale to be deposited in the registry of the Court for the purpose of adjudicating all rights therein, including the rights of the beneficiaries, as well as the right of the plaintiff Liquidator by reason of the lien of the Trustee, the Trust Company of Florida, for advances made for the benefit of said property.

The Liquidator of the Trust Company of Florida (which company had acquired this property by foreclosure of a trust deed, and held title for the benefit of the bondholders to whom participating ownership certificates had been issued) was engaged in the performance of his official duty, under the appointment and supervision of the State Comp-

troller, and as a part of the machinery set up by the Legislature for this very purpose. He had no personal interest in this matter. It was his legal duty, to the creditors of the defunct Trust Company, as the statutory Liquidator of the Trust Company, to insist upon the reimbursement of all the proper advances made and expenses incurred by the Trust Company in the administration of this trust, and if that be a ground to hold him as occupying an antagonistic position to the beneficiaries of the trust and his displacement and the appointment of a Court Receiver in his place, then Court Receivers could and should be appointed for all statutory Liquidators of trust companies at once. And yet we have uniformly held that the Comptroller and his Liquidator are entirely competent to execute all trusts within the powers of the corporation to be liquidated. Nor will the courts interfere with the operation of the statutory system for the liquidation of insolvent banks and trust companies, by the displacement of statutory Liquidators and the appointment of Court Receivers in the absence of fraud, corruption, maladministration, or other illegality. See Davis v. Knight, 98 Fla. 891, 124 So. 461; State v. Barns, 99 Fla. 1258, 128 So. 860; Power v. Chillingsworth, 93 Fla. 1031, 113 So. 280; Knott v. Morris, 101 Fla. 1299, 134 So. 615. And only in the extreme cases may the general administration by the Liquidator of an insolvent bank or trust company be arrested or substituted by a Receiver in equity. State v. Circuit Court, 102 Fla. 112, 135 So. 866; State v. Circuit Court, 102 Fla. 122, 135 So. 870; State v. Willmen, 102 Fla. 64, 135 So. 859; Therrell v. State Life Ins. Co., 107 Fla. 450, 145 So. 220.

The exact question here presented was not involved in the case of Douglas Properties, et al., v. Stix, 159 So. 1,

which case might be considered in connection with Therrell v. State Life Ins. Co., *supra*.

The Federal Courts have clearly recognized the principles heretofore adopted by this Court. In the case of Bank of Bay Biscayne v. Hankins, 42 Fed. (2d) 209, which was an appeal from an order of the District Court for the Southern District of Florida, the Circuit Court of Appeals for the Fifth Circuit said:

"Regardless of the terms used, it is apparent that the order in effect appoints a Receiver to control the assets of the failed bank, and enjoins the Comptroller from carrying on the liquidation of the institution under provisions of the laws of Florida. A bank organized under the laws of a State is a quasi-public institution, and, whenever the laws of the State provide for supervision and control of the affairs of the bank by an authorized official, and also for the ultimate liquidation and distribution of its assets under his direction, in the event of its insolvency, it is a matter of grave consequence for any Court to interfere, and that should be done only in a perfectly clear case. It does not appear from the record that such a case is presented here. The laws of Florida provide an orderly method of liquidating the affairs of an insolvent State bank, in substantially the same manner that Federal statutes provide for the liquidation of an insolvent national bank. Section 6102, *et seq.*, Comp. Gen. Laws of Florida, 1930 Supplement; State of Florida, *ex·rel.*, v. Barns (Fla.) 128 So. 860. It is usually a matter of discretion to issue an injunction and appoint a Receiver, but the exercise of jurisdiction and the entering of the order appealed from in this case appear to us to be unwarranted."

And in Trust Company of Florida v. Illick, *et al.;* Amos, Comptroller, Intervenor, 54 Fed. (2d) 286, the Circuit

Court of Appeals for the Fifth Circuit, speaking through Circuit Judge Sibley, said:

"The statutes of Florida contain·elaborate provisions for the organization, regulation, and liquidation of banks through the Comptroller. Comp. Gen. Laws Fla. 1927, Section 6052 and f. f. By Section 6145 trust functions can be exercised by a corporation only when chartered therefor, and by Section 6125 the laws as to banks apply to the incorporation of trust companies. By Sections 6102 and 6108, as amended in 1929 (Chapter 14487), a trust company equally with a bank may, when it becomes insolvent and defaults, or is in an unsound condition and threatened with insolvency, be taken in charge by the Comptroller, who may appoint a Liquidator who shall take charge of all assets and manage and liquidate the business under the direction of the Comptroller. The latter section provides that, pending the possession by the Comptroller, and until he either appoints a Liquidator or decides that business may be resumed, all the remedies at law or in equity of any creditor or stockholder against such bank or trust company shall be suspended. Like the receiver of a national bank, the Liquidator, though confirmed by a Court, is not an officer of the Court, but the representative of the Comptroller. *Ex parte* Chitwood, 165 U. S. 17 S. Ct. 385, 41 L. Ed. 782; Florida Bank Trust Company v. Yaffey (Fla.) 136 So. 399. He is in Court only as he may be specially impleaded. No question of comity between courts arises. The relative priority of the seizure by the Comptroller and the. application for a Court Receiver is not the controlling question. The Liquidator not being an officer of a Court in which persons concerned may intervene, he of necessity may be called to answer for dereliction or illegality in his management in any Court having jurisdiction in particular·matters;

but only in extreme cases may his general administration be arrested or substituted by a Receiver in equity. State, *ex rel.* Dade County Security Co., v. Barns, 99 Fla. 1258, 128 So. 860; Bank of Bay Biscayne v. Hankins (C. C. A.) 42 F. (2d) 209. Jurisdiction so to do seems to be denied to the State Court of Equity in State v. Circuit Court (Fla.) 135 So. 866."

"We need not inquire whether the equity jurisdiction of a Federal Court may be thus curtailed by State law, because in this case a general receivership for the Trust Company of Florida was denied, and particular relief only was granted touching certain trusts. We need only inquire whether under general principles of equity the relief granted was proper. In the unforeclosed trust mortgages, the Trust Company of Florida had a title in trust, with a contract right under which fees might be earned. In those which had been foreclosed it held title in fee, but subject to equitable rights in the several bondholders. In all cases it claims to have made advances in the line of its duties as Trustee and to preserve the property for which it has a lien thereon, totaling over $400,000.00, more than twice its capital stock. The safety of this investment and the solvency of the company depend on the management and eventual disposition of the trust properties. The handling of these two hundred trusts is the major part of the business of the company. It is plain that the trusts are in a very substantial sense property and business of the Trust Company which the Comptroller may seize and liquidate under the law. The Comptroller and his Liquidator are competent to execute trusts like those here involved; they being within the powers of the corporation to be liquidated. Power v. Chillinworth, 93 Fla. 1030, 113 So. 280. Even if the corporation placed in liquidation has been an unfaithful Trustee,

no presumption can be indulged that the State officials will not be careful, efficient, and economical. A proper respect and deference on the part of the Federal agencies of government toward those of the State compels that assumption. It is said in Knott v. Morris (Fla.) 134 So. 615, that fraud, corruption, maladministration or other illegality in the liquidation must be established to justify Court interference. No such thing here appearing, the Court correctly refused to take over the liquidation of the Trust Company of Florida by a general receivership, but improperly took over a large part of its assets and affairs by the special receivership and by enjoining the Comptroller from exercising his functions in reference thereto."

The judgment in that case was reversed, with directions to dissolve the receivership, etc.

The position thus taken by this Court and the Federal Circuit Court of Appeals has been abundantly supported by three recent decisions of the Supreme Court of the United States, not yet reported except in the "Advance Sheets of the Supreme Court Reporter and the Law Edition, to-wit: Pennsylvania v. Williams, 79 L. Ed. Adv. Sheets 385; Gordon v. Omisnky, 79 L. Ed. Adv. Sheets, P. 390; and Gordon v. Washington, 79 L. Ed. Adv. Sheets, P. 626.

I think that if our original decision in this case stands (in which the writer did not participate) it means a retreat by this Court from a well fortified position already taken, which had won the respect and acquiescence of the Federal Courts, a retreat which I do not believe is justified.

I think, therefore, the petition for rehearing should be granted, or that the order of the Court below be reversed without rehearing.